Good morning, Your Honors. May it please the Court, my name is Andrea Sanceri and I represent the Plaintiff Appellants. I'd like to reserve four minutes for rebuttal. I'd like to focus my time today on two significant agency violations that the Forest Service committed in connection with the Idaho for Wildlife Predator Derby. First, the agency violated its own regulations by failing to require a special use permit for the use of Forest Service-managed lands in connection with the derby. Second, the Forest Service violated the National Environmental Policy Act by failing to prepare any environmental analysis to evaluate the potential impacts of this derby. Can I just pause for a second because I want to make sure I understand what is the relief that you are seeking in this case? Your Honor, we're seeking declaratory and injunctive relief. So declaratory relief that the Forest Service violated the National Environmental Policy Act and its own regulations, and injunctive relief that the Forest Service cannot permit another derby to move forward without requiring a permit. Okay, so that's the first part, the declaratory relief that you're seeking. The derbies, as I understand it, there was one in 2013, correct? There was one in 2013, yes. This challenges to the 2015 derby. And then there's the one in January of 2015, correct? Correct. Those are now over. Yes. And there's no one seeking any compensatory damages or anything like that in this case, correct? Correct. So how do we have Article III standing? We'll get to the injunctive relief here in a second, but on the declaratory relief, how do we have Article III standing in a sense to opine that these derbies from a few years ago were illegal if normally we have to redress an actual injury? Yes. And so what injury are we, will we be redressing if we were to go your way in this case? Sure. So, well, first I'd like to point out that the district court found that plaintiffs do have Article III standing. Okay. As the court pointed out, appellants submitted numerous declarations establishing their injury. So, for example, Ms. Cotton has interest in seeing agencies comply with the law. Right, but that's future. That's saying she wants them to comply with the law. I'm asking you as to the previous derbies, what is the injury that we would be redressing? Well, I think she had a previous interest in the agencies complying with the law as well. Right, but that's under the mootness doctrine. We can't go back and fix that. So if she were seeking compensatory damages, then yes, then there would be an actual damage award that we would be reviewing. But if it's just, I think, an agency violated the law, normally that's not good enough for us. We have to actually have an injury we can redress. And I say this because the Supreme Court has whacked this court on the head in the environmental cases on Article III, and I just want to make sure that we're on good standing here. Yeah, understandable. So there is effective relief that can be granted in this case. I think declaratory relief that the Forest Service violated the permitting regs and NEPA alleviates the procedural harm alleged by Ms. Cotton. It also impacts the Forest Service's action related to future derbies. And just practically speaking, relief could, you know, lead to a permit with terms and conditions that could, you know, mitigate the harm caused by the previous derbies. This case also falls under the mootness exception for capable of repetition yet evading review. Is there anything in the record, and then I want you to get back to your presentation, but is there anything in the record suggesting that there is going to be another derby? Well, there are a few things in the record, Your Honor. Idaho for Wildlife's executive director submitted a declaration to the district court, and in that he said Idaho for Wildlife has not yet determined whether it will hold another derby, which implies there would be a possible future derby. Idaho for Wildlife also considers the derby an annual event. They've referred to it several times as that. They've sponsored it two years in a row. When they applied for a permit for the BLM, they applied for a five-year permit. And, you know, even if Idaho for Wildlife for some reason doesn't hold another future derby, other sponsors might hold derbies in Idaho. And I would point you to Alaska Center for the Environment versus Forest Service 189 F3D85. And in that case, the plaintiffs challenged the Forest Service's issuance of a special use permit for heliskiing guides. without complying with NEPA. And in that case, the specific permittee could not apply for another permit, but the court found the case was not moved, and that was a Ninth Circuit case, because other guides could still apply for a permit. All right. Thank you. So I'd like to start with discussing the plain language of the regulations, because I think that really is where this case hinges. The plain language says that a special use authorization is not required for noncommercial recreation, such as hunting, unless the proposed use is a noncommercial group use. So notably here, the Forest Service could have exempted hunting from the permitting requirements, but it didn't do that. Instead, it expressly included hunting as an activity that may require a permit if it is group use. Group use is further defined as an activity conducted on National Forest System lands that involves a group of 75 or more people, either as participants or as spectators. This language is clear and unambiguous. It requires nothing more than a group of 75 or more using Forest Service-managed lands for the permitting requirements to kick in. The Forest Service here intentionally chose a numerical threshold to determine when a permit is required, describing it in the preamble to the final rule as purely objective, non-discretionary, the fairest and most objective standard. Idaho for Wildlife's application requested the use of Forest Service lands for up to 150 to 200 people to participate in this derby. This clearly constitutes group use under the plain language of the regulations. My concern is the regulation actually talks about use of a certain area, and clearly to me there wasn't a request for use of a certain area. So how do you respond to that other than saying the entire park or... Yeah, so the plain language actually just says National Forest System lands. There are some areas in the preamble that talk about use of an area, but the regulation itself only says National Forest System lands. But, yeah, I mean if you want to talk about congregating in a certain area, I think that in the preamble, and this might be what you're referencing, Your Honor, is the Forest Service stated the rule will apply to a group of 75 or more people that request to camp in the same area, even if they intend to camp far apart from each other. But derby participants actually are congregated. Idaho for Wildlife's executive director admitted in a declaration to the court that he directed participants to hunt within 100 miles of salmon. And even as a practical matter, participants are going to be staying close to salmon. They're hunting in the winter. There's not a lot of daylight hours. They have to be back at 6 o'clock to check in their animals that they've killed. So I think it's a practical matter. They're going to be congregated. But importantly, I think congregation is not a stated requirement in the plain language of the rule. And for good reason. I think a congregation requirement would be almost impossible to implement consistently. One would ask how close do participants have to be to each other? Do they have to be 50 feet within each other, 5,000 feet? This is the reason that the Forest Service chose a numerical threshold, which is objective and is easy to implement consistently. And that's why the Forest Service chose that to determine when a permit is required. So requiring a permit for the Derby is also consistent with the purpose of the regulations here. The Forest Service could implement terms and conditions to allocate recreational use, protect public safety, and prevent adverse impacts to the Forest Service, all of which are implicated here. So, for example, the Forest Service could suggest that Derby participants avoid certain areas where there's maybe a family reunion or a dog show taking place. To protect public safety, they could simply ask Idaho for Wildlife to post signs in the forest so that people visiting the forest know that this Derby is occurring. As of right now, there is no public notice to the service, or to the public. So the Forest Service, their interpretation would have, there would be public notice and a permit for a Girl Scouts camp or a religious gathering that has 75 or more people, but no public notice for this Derby that could potentially have more impacts to other recreational users and public safety than, I would argue, a Girl Scout camp might. I'd like to also talk about the National Environmental Policy Act a little bit. NEPA requires that agencies prepare an environmental impact statement for all major federal actions significantly affecting the quality of the human environment. The Council on Environmental Quality regulations specifically state that actions approved by permit generally do constitute major federal action requiring compliance with NEPA. In the Forest Service regulations at issue here, the Forest Service also states that it would be required to comply with NEPA when issuing a special use permit. And notably, when the Bureau of Land Management considered issuing a permit for this Derby, it prepared an environmental assessment to comply with NEPA. I think the Forest Service should do the same here. And I would like to reserve the rest of my time for rebuttal. Very well. Thank you. Good morning, Your Honor, and may it please the Court. My name is Christine England. I'm an assistant U.S. attorney with the District of Idaho here on behalf of the government. I'd like to start with the issues concerning justiciability and then move on to the merits today. As Your Honor has pointed out, the last Derby was held in January of 2015. That means we've gone through three seasons with no other Derby of this event proposed by any group that we're aware of. And no organization has suggested to the Forest Service that they would hold another one. And so because of that, plaintiff's challenge to these former Derbys, the one in January of 2015 and in December of 2013, are moot. And any request for future relief is simply unripe, because there is no current proposal before the Forest Service to consider a future Derby. This is — how does the — how did the parties ever get a resolution of this issue? Because, you know, a Derby's announced, the organization files a lawsuit, then it's whatever goes away one way or the other, and then there's an appeal and it's moot because there's not going to be another Derby that's at least not on anybody's schedule. So isn't there an interest in — this is sort of a capable repetition issue, but isn't there an interest in resolving the legal issues about what these regulations mean? I think that the — I think that the problem — well, so let me take that in two parts, I guess. First, I think it is possible to obtain review, and the plaintiffs did with the first Derby. They filed a motion for a temporary restraining order. They had that motion heard, and they chose not to appeal. So I think that there was the opportunity there to have the issue reviewed before the Derby was held and before — with an actual proposal in front of the Forest Service. In terms of having these issues resolved, I think for all the reasons that the Court chooses to determine or by the Constitution hears live controversies, it makes more sense to hear a case on an actual proposal where the Court knows what's being proposed to the Forest Service, because the facts — the facts matter. When the Forest Service receives an application or receives a proposal of some kind, it has to consider the specific facts proposed by that organization to determine whether it falls within its regulations. And here — But cancel — cancel, isn't it? Yes, Your Honor. Didn't this group try to challenge the Derbys in 2013 and in 2015 and just was unable to do so? And they filed the suit. As I — with respect to the 2013 Derby, Your Honor, this group filed a motion for a temporary restraining order and heard — and had that motion heard and decided by the district court before the 2013 Derby, and they elected not to appeal that denial of the temporary restraining order. In 2015, the group did file suit before the 2015 Derby. I believe they filed in November of 2014, but elected not to seek a preliminary injunction or other initial relief, and so did not obtain review before the 2015 Derby. So when was this suit filed? This suit — as I said, I believe it was November of 2014, with the 2015 Derby being held January 1st through January 4th of 2015. So this is that suit? Yes. The one that's challenging the 2015? Yes. And you're arguing it's new because the 2015 Derby came and went before it got to us on appeal? That's correct. Okay, so why isn't this a case where it's capable of repetition but while evading review? Wasn't this, like, the perfect example of that? I don't think so, Your Honor, and that's because they were able to obtain review for the 2013 Derby and chose not to for this — for the 2015 Derby. As I explained, they — I don't understand why that's relevant. I mean, so the 13, they didn't appeal it. But this is the one — this is the appeal from the 15, which they filed suit before it took place. And they're like — And you're arguing it's new because it's — oh, I'm sorry, but just didn't seek an injunction. Right. Exactly. They filed suit with time to seek a preliminary injunction and potentially seek appellate review but chose not to. So how does that bear on the legal issue? I think that that shows that the — with respect to both prior Derbys, they were capable of obtaining review. So if in some future year, which at this point would be unpredictable by anyone, someone proposes some similar event, the plaintiffs or whoever might wish to challenge it in that case would have time to obtain that review before — before the event went forward. On a preliminary basis, preliminary — they would have to file preliminary — for preliminary relief, be denied, then take it up to this Court. Possibly. Again, I think it would really depend on the facts of the case. So here, with respect to the 2015 Derby, the applicant, Idaho for Wildlife, submitted a permit application in August of 2014. And so — and the Forest Service determined that no permit was required also in August of 2014. So it would be possible that if plaintiffs or, again, any group wishing to challenge it sooner and could have obtained review on not a preliminary basis. But again, it really — it's just so dependent on what the facts of a future event would look like that I can't say for sure. And I think that that's exactly why this case presents these justiciability issues. And as Judge Owens pointed out, at the district court we framed it as a standing issue because of the problems with redressability. And here we're looking at the same thing from a mootness and a ripeness perspective because we just don't have something we're looking at and evaluating now for the court to opine on. I mean, I take it that there wouldn't be a mootness issue had someone alleged compensatory — that they were seeking compensatory damages. For example, if someone said, we were planning on having a wedding in the forest that day and all of a sudden a bunch of guys in ATVs and guns come running through and it ruined our wedding day, we want compensatory damages for that, then that would be — that would take it out of this mootness problem. Well, yes. Yes. And it would certainly be redressable because there would still be a live controversy in front of the court to answer, which we just don't have here. Now, did any party — I guess it wouldn't be the government here, but did the plaintiffs in this case, did they seek any type of stay pending appeal with the district court? No. Not in either the 2013 or the 2015. In the 2013, they didn't seek an appeal at all. Sure. And in 2015, the derby had taken place by the time the district court were issued an order. I believe the district court's decision was in January of 2017, and the last derby, again, was in January of 2015. If there are no further questions regarding justiceability, I'll move on to the merits here. I just want to hear your response to what in the record suggests that there will or will not be a future predator derby of this nature. I think Ms. Centesieri has addressed that as well as I can as well, in that the executive director for Idaho for Wildlife submitted a declaration in the district court that they have no plans for a future derby. It sort of leaves open it could happen, it could not, but I think that doesn't meet the Supreme Court's requirement for seeking an injunction, certainly, that there's a likelihood of immediate and substantial harm. That's just not present here. And so that's the only thing I'm aware of in the record. Thank you. Again, if there are no questions regarding justiceability, I'll move on to the merits here. The Forest Service here determined in response to the 2014 application that the Idaho for Wildlife, the applicant, was not seeking a use of Forest Service land, and so its regulations did not apply. 36 CFR 251.50 requires a special use authorization for all uses of National Forest System lands. And here Forest Supervisor Mark explained that participants were not using the forest. Participants are not paying organizers to go onto the National Forest to hunt, and organizers are not offering equipment or services to facilitate hunting on the National Forest. Participants in the derby may hunt anywhere they wish. They are not limited to an area of National Forest System land, nor are they being specifically invited to an area of National Forest System land. And that's in the excerpts of record at 155. In Plaintiff's reply, they said, well, the fact that Idaho for Wildlife submitted an application assumes this use. But I think that you have to look at the application that Idaho for Wildlife submitted to consider the use question. And if you look at the application, and that's in the excerpts at 146, when asked for the location and description of National Forest System lands and facilities that the applicant would like to use, Idaho for Wildlife replied, not applicable, because they weren't planning to use any specific Forest Service lands. And when asked in the operating plan what, how many acres of the National Forest would be used, and that's in the excerpts of record at 149, they responded that none would be needed. So even based, that's why based on the application, the Forest Service determined that what this applicant was proposing was not a use of Forest Service lands, and did not implicate, did not implicate the Forest Service's regulations. If the court determined that there was, in fact, a use, and that this application did seek a use of National Forest System lands, the Derby organizers here did not propose a group use, because there was no group using the forest, just individual hunters. As Ms. Santasieri recited, the definition for group use of the forest is an activity conducted on National Forest System lands that involves a group of 75 or more people. And the problem with plaintiff's interpretation is they read that word group out of the regulation. They just say an activity with 75 or more people. But that's not what it says. It says involving a group of 75 or more people. And the Forest Service has reasonably interpreted that term to require some sort of concentration or congregation. That is reflected both in the chief of the Forest Service's explanation in the excerpts of record at 127 and in the Federal Register that you pointed to, Judge Lefkoe. And this interpretation is entitled to substantial deference. This is an agency interpreting its own regulation, which is entitled to the highest form of deference here. Are you arguing Chevron deference? No. Here, because it's an interpretation of their own regulation, it would be our deference. Okay. But I think not only is the interpretation here reasonable, it's also the best interpretation. And that's because the Forest Service has to have some way to enforce this regulation, enforce this regulation that includes criminal penalties. And how on earth would you enforce it without some sort of congregation or concentration? Are you going to stop individual forest users and say, hey, wait a minute, you have a gun. Are you hunting with this group or not with this group? Or, hey, wait a minute, you have a patch on your shoulder that says Idaho for Wildlife. Are you participating in this contest? It requires this sort of arbitrary enforcement of harassing individual forest users, potentially based on what they're doing. And so the concentration interpretation is, again, not only a reasonable use, which is a reasonable interpretation, which is all that's required, but here it's the best interpretation. And with that, if the Court has no further questions on the merits, I would ask that you either dismiss this appeal or, in the alternative, affirm the district court's finding on the merits. Thank you, Counsel. Thank you very much. Thank you, Your Honors. I'd like to go back and address mootness just one more time to make sure we're clear where we stand on this. You know, this case is absolutely capable of repetition, yet evading review.  And I pointed to a few places in the record where Idaho for Wildlife's executive directors stated that they might or might not hold another derby in the future. They haven't decided yet. But I'd also like to point you to a news article that we submitted and asked for judicial notice. And, you know, this and other courts have taken a more liberal view of permitting discovery or extra record evidence when considering jurisdiction of a case. So I think it's appropriate to look at this news article. And that is Exhibit A to Documentary 37. And in this news article, just two months after the district court decided in defendants' favor, Idaho for Wildlife's executive director stated that because they had won in district court, he was considering holding several more derbies on Forest Service land in Idaho. He was looking at holding derbies outside the towns of Sandpoint, Bonner's Ferry, or if you know, I think this demonstrates that a future derby on Forest Service lands in Idaho is very likely. And I think it's also important to point out that if this court finds that no permit is not warranted and not necessary, then in the future we're unlikely to have any agency action. You know, derby contestants and organizers will not apply for a permit from the Forest Service because they will be under the impression going forward they don't need one. So we won't have any agency action. And the public will have absolutely no notice of these derbies. Well, if that's the law, what's wrong with that? Well, I would argue it's not the law, Your Honor. I think the plain language does not require congregation. It's an extra word that the Forest Service is reading into the plain language of this regulation. The Forest Service chose a numerical threshold of 75 or more people and that is all that is required. And I think it's important to point out that the Forest Service included hunting as an activity that needs a permit if there is group use. So if this isn't group use hunting, I don't know what is. So with that, I would ask that this court reverse the district court's summary judgment order in favor of defendants and grant relief to plaintiffs as may be appropriate. All right. Thank you, counsel. Thank you to both of you for your briefing and argument in this case. This matter is submitted.
judges: Wardlaw, Owens, Lefkow